UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THURMAN GAINES,<br><br>          Plaintiff,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS, *et al.*,<br><br>          Defendants. | Case No. 1:15-cv-00587-RRB<br><br>**<u>DISMISSAL ORDER</u>** |

Plaintiff Thurman Gaines a California state prisoner appearing *pro se* and i*n forma pauperis*, brings this civil rights action under the Civil Rights Act (42 U.S.C. § 1983) and the Americans With Disabilities Act ("ADA") (42 U.S.C. §§ 12101, *et seq.*) against various officials of the California Department of Corrections and Rehabilitation.[1]   Gaines is currently housed at the California Institute for Men, Chino, California.  The acts underlying the Complaint occurred in part at the Substance Abuse Treatment Facility ("SATF"), Corcoran, California, and in part at the Mule Creek State Prison ("MCSP"), Ione, California.

---

[1]  In addition to the California Department of Corrections and Rehabilitation Gaines names as Defendants:  L. D. Zamora, Chief, Medical Appeals; T. Byers, PA; Horowitz, MD; Robert Rudas, MD; S. Cornell, RN; Correctional Officer Greenwall; and Correctional Officer Mayberry.

I.      SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2]  This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3]  Prisoner *pro se* pleadings are given the benefit of liberal construction.[4]  While this Court must liberally construe papers filed by *pro se* parties, *pro se* parties must none-the-less follow the applicable rules of practice and procedure.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a).  Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6]  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[2]  28 U.S.C. § 1915A(a).

[3]  28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

[5]  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.") (overruled in part on other grounds in *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc)).

[6]  Fed. R. Civ. P. 8(a)(2).

accusation."[7]  Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[9]  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10]  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## II.   GRAVAMEN OF THE COMPLAINT

Gaines suffers from several disabilities:  degenerative bone disease in the lumbar of the spine; arthritis in the hip and knees; hypertension; and Hepatitis-C.  Gaines also has a learning disability with a TABE Score below 5.0, no high school diploma or GED, with

---

[7]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[8]  *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[9]  *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[10]  *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[11]  *Id.*

[12]  *Id.* (quoting *Twombly*, 550 U.S. at 555).

difficulty reading and understanding. Reduced to its essence Gaines' Complaint is that the Defendants failed to provide proper accommodation for his disabilities in that they failed to assign him to a lower bunk and a lower tier, or to take other appropriate necessary actions to accommodate Gaines' documented disabilities. As a result, Gaines suffered injuries from two falls: June 30 and July 22, 2014. Gaines sues the individuals in both their individual and official capacities. Gaines seeks damages, injunctive, and declaratory relief.

PA Byers. Gaines contends that Byers, a Physician's Assistant at SATF, was deliberately indifferent to Gaines' medical condition in that Byers allegedly stated: "'I can't do anything about your housing or even hear your complaint, 'I am only here about your shoes and back brace.'"[13]

Dr. Zamora. Gaines contends that Dr. Zamora, as Chief Medical Officer, failed to appoint a staff member to represent Gaines so that Gaines' internal grievances would receive proper attention. Gaines also appears to contend that Dr. Zamora failed to investigate Gaines' claims, properly train and supervise his subordinates and/or adopt and enforce appropriate policy to prevent harm. Additionally, it appears that Gaines is alleging that Dr. Zamora erred because he should have known that the medications prescribed for Gaines' condition caused dizziness and loss of coordination, and should only have been assigned to inmates on the lower tier.[14]

---

[13] Complaint, Docket 1, p. 13.

[14] *Id*., pp. 15–19.

Dr. Horowitz. Gaines contends that Dr. Horowitz, the attending Physician at MCSP, was deliberately indifferent to Gaines' serious disabilities. Although unclear, it appears that Gaines is alleging that, despite her knowledge of the side-effects of the prescribed medications and Gaines' two falls, Dr. Horowitz was indifferent to Gaines' complaints of dizziness and weakness in that she refused to place Gaines on lower-tier/lower-bunk status, allegedly stating "'I can't do anything about your housing, that is up to custody staff.'"[15]

Dr. Rudas. According to Gaines, Dr, Rudas, an emergency room physician at MCSP was also deliberately indifferent to Gaines' serious medical condition. Specifically, Gaines alleges that at the time of his treatment for the injuries suffered in the first fall on June 30, 2014, Dr. Rudas allegedly stated: "'There is nothing I can do about your housing, I'll refer you back to your Doctor in 5 days.'"[16] As a consequence Gaines fell a second time.

RN Cornell. Gaines alleges that despite his complaints of being dizzy, falling and injuring himself, RN Cornell, the triage nurse at MCSP on June 30, 2014, was deliberately indifferent, allegedly stating: "'There is nothing I can do about, you'll have to talk to the Doctor."[17]

Correctional Officers Greenwall and Mayberry. As against the correctional officers Gaines alleges that despite their knowledge of his serious medical conditions and the difficulties Gaines had in ambulating and an expressed sympathy, Greenwall and Mayberry

---

[15] *Id., p. 22.*

[16] *Id.*, p. 26.

[17] *Id.*, p. 27.

failed to protect him.  Specifically, that even after Gaines was returned from treatment for a fall down a flight of steel stairs, Greenwall and Mayberry failed to take reasonable steps to alleviate the risk of harm by failing to act or call a supervisor.[18]

## III.    DISCUSSION

Initially the Court notes that the Complaint is in narrative form with legal argument and citation to authorities, which reads more like a brief than a complaint.  To the extent that Gaines attempts to assert a class action on behalf of all similarly situated prisoners, because Gaines who is appearing *pro se* cannot fairly and adequately represent the interests of the class, the Court declines to certify this matter as a class action.[19]

The Court also notes that, to the extent that his Complaint is based upon an alleged violation of § 1983, it does not support an action against the Defendants in their official capacities.  The Supreme Court has held that "states or governmental entities that are considered 'arms of the State' for Eleventh Amendment" are not "persons" under § 1983.[20] The Supreme Court also clarified that "a suit against a state official in his or her official capacity . . . . is no different from a suit against the state itself."[21]  Thus a suit against a state official may only be asserted against the official in his individual capacity.  Thus, to

---

[18] *Id.*, pp. 31–32, 34–35.

[19] Fed. R. Civ. P. 23(a)(4).

[20]  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70 (1989).

[21]  *Id.* at 71; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that an official capacity claim is simply "'another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Svcs. of N.Y. City*, 436 U.S. 658, 690 n.55 (1978)); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (stating that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its [Eleventh Amendment] sovereign immunity from suit even though individual defendants are nominal defendants").

the extent a plaintiff seeks monetary damages from an official acting in his or her official capacity the claim must be dismissed.  Eleventh Amendment immunity does not, however, preclude the granting of prospective relief.[22]  In this case, although Gaines seeks injunctive and declaratory relief, in his Complaint Gaines also affirmatively alleges that he has received a lower-bunk/lower-tier chrono.[23]  Thus, his request for injunctive and declaratory relief is moot.

On the other hand, to the extent that Gaines seeks relief under Title II of the ADA, his action against both CDCR and the individual Defendants in their official capacities is not barred by the Eleventh Amendment.[24]  In the case before this Court, however, it is unclear how and the extent to which the failure to assign Gaines to a lower-bunk/lower-tier resulted in his preclusion from participating in the everyday activities, e.g., day room, yard, church, *etc*., beyond the difficulties inherent to his physical infirmities.[25]  The fact that Gaines was unable to participate in those activities while recuperating from his injuries, while it may be a basis for his damages under § 1983, does not support a claim under the ADA.  Although in its present form Gaines Complaint does not support a an ADA claim, at this point the Court cannot definitely find that cannot properly plead such a claim. therefore, Gaines the ADA claim will be dismissed with leave to amend.

---

[22]  *Ex parte Young*, 209 U.S. 123 (1908).  The *Young* doctrine "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury."  *Milliken v. Bradley*, 433 U.S. 267, 289 (1977).

[23]  Complaint, Docket 1, p. 6.

[24]  *See Tennessee v. Lane*, 541 U.S. 509, 530–34 (2004).

[25]  The general, vague allegation in the Complaint that, because of his general fear of falling, he was denied participation in those activities, standing alone, is insufficient.

For the purpose of screening the Complaint, the Court assumes that the failure to assign Gaines to lower-bunk/lower-tier was the proximate cause of the two falls that resulted in his injury.[26]  For the reasons that follow, the Court finds that, as presently drafted, Gaines' Complaint is deficient.

Throughout his Complaint Gaines refers to some "underground" CDCR sanctioned rules that precludes his assignment to a lower-bunk/lower-tier absent an order of a physician.[27]  Gaines also appears to attack some unspecified prison regulation as being unrelated to a legitimate penological interest.[28]  The problem this Court faces is that those allegations do not support any plausible claim for relief against any of the Defendants except, perhaps, CDCR.

Turning to the individual Defendants, they may be grouped into two categories: (1) custody; and (2) medical.  Greenwall and Mayberry fall within the first category, while PA Byers, Dr. Zamora, Dr. Horowitz, Dr. Rudas, and RN Cornell fall within the second.

Correctional Officers.  The sole allegation against Greenwall and Mayberry is that, despite their knowledge of his fall and injury, they failed to call a supervisor.  Reading the Complaint as a whole, this allegation fails to raise any triable issue of fact.  Not only were medical personnel aware of Gaines' disabilities, according to the Complaint so were the superiors in that Greenwall and Mayberry were supposedly deficient in failing to notify.  There is simply no causal connection between the alleged omissions of either Greenwall or Mayberry and the injuries suffered by Gaines.  Nor does it appear that under the facts

---

[26]  Docket 1, p.24

[27]  *See*, e.g., Docket 1, pp. 7–10, 14, 20, 31, 36–37.

[28]  *Id.*, pp. 8–9.

pleaded that Gaines can truthfully plead a plausible cause of action against either Defendant.  Therefore, the Complaint as against Greenwall and Mayberry must be dismissed without leave to amend.

PA Byers.  According to Gaines, while incarcerated at SATF he filed a CDCR 602 requesting a lower bunk and lower tier.  Without further explanation Gaines appears to allege that PA Byers was somehow at fault for failing to take reasonable steps to prevent Gaines from falling down stairs, an event that occurred *after* Gaines was transferred from SATF to MCSP.  As presently drafted the Complaint fails to state a cause of action against Byers.  While it is unlikely that Gaines can truthfully plead facts that support a claim against Byers, the Court cannot at this point definitely state he cannot.  Therefore, the Complaint as against PA Byers will be dismissed with leave to amend.

RN Cornell.  The sole allegation against RN Cornell is that she deferred his request for assignment to a lower-tier/lower-level bunk to the attending physician.  The allegations indicate that the attending physician, Dr. Rudas, declined Gaines' request for assistance in moving from the top tier.  The fact that the attending physician, not the nurse, is responsible, precludes any finding that the nurse was deliberately indifferent.  The existence of a general duty to protect, like negligence, while it may be sufficient under state law to support a claim, it is patently insufficient to support a claim under either § 1983 or the ADA.  Therefore, the Complaint as against RN Cornell must be dismissed without leave to amend.

Dr. Zamora.  As against Dr. Zamora his involvement is less than clear.  It appears that in February 2012 Dr. Zamora, as the health care appeals coordinator, somehow failed to address a request for lower-bunk/lower-tier assignment.  Gaines further alleges that Dr.

Zamora should have appointed a staff member to represent Gaines in the appeal process and has failed to properly train and supervise staff.   Because of the manner in which Gaines has presented his claim, in conclusory terms, it is difficult for either the Court or Dr. Zamora  to ascertain precisely what acts have harmed Gaines, or the manner in which they harmed him.   In particular, the nexus or connection between the processing of the CDC 602 in February 2012 and the injuries suffered as a result of Gaines' housing after his transfer to another prison some 23 months later.   Also, although Gaines refers to the CDC 602 and selectively quotes therefrom in his Complaint, he does not attach the document.   When referencing a document, it should be attached to the complaint and incorporated by reference.

    Dr. Horowitz/Dr. Rudas.   Taking the allegations of the Complaint as true as the Court must, it is not clear that either Dr. Horowitz or Dr. Rudas had knowledge of Gaines' physical infirmities and his housing assignment prior to the time of his first fall (June 30). Accordingly, in the absence of evidence that Dr. Horowitz and/or Dr. Rudas had knowledge of Gaines' infirmities and a physician-patient relationship with Gaines prior to the first fall, neither had any reason or obligation to intervene in Gaines' housing assignment. Therefore, as presently pleaded Gaines has failed to plead facts sufficient to warrant the granting of relief as against either physician for the injuries suffered in the first fall.

    With respect to the second fall, which clearly occurred after both physicians had the required knowledge, the problem Gaines faces is the short period between the two falls, 22 days.  To prevail, Gaines must allege and prove the element of causation. That is, had Dr. Horowitz and/or Dr. Rudas either had the authority to change the housing assignment, or failed to initiate the required process to change Gaines' it, and that failure was the

proximate cause of the second fall.[29]   Furthermore, Gaines has pleaded that at the time

of his Complaint, March 30, 2015, he is housed in a different prison where he has been

assigned lower-bunk/lower-tier, but has not indicated when these occurred or the reasons

for these actions.

Exhaustion.  Gaines' claims as against the medical-care providers potentially runs

up against another barrier to relief: the requirement that he have fully exhausted his

administrative remedies.  Exhaustion of administrative remedies prior to bringing suit is

required irrespective of the relief sought by the prisoner and regardless of the relief

provided by the process.[30]   Although not jurisdictional, exhaustion is nonetheless

mandatory, and there is no discretion to excuse it.[31]   "Proper exhaustion" means

"complet[ing] the administrative review process in accordance with the applicable rules."[32]

"The level of detail necessary in a grievance to comply with the grievance procedures will

vary from system to system and claim to claim, but it is the prison's requirements, and not

the PLRA, that define the boundaries of proper exhaustion."[33]

---

[29] Although Gaines has specifically pleaded how the first fall occurred (down the stairs), he has not pleaded how he fell the second time or its connection to his disability and housing assignment.  In amending, Gaines must specifically allege the facts surrounding the second fall.

[30] 42 U.S.C. § 1997e(a) (mandating that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 742 (2001).

[31] *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

[32] *Jones v. Bock,* 549 U.S. 199, 218 (2007).

[33] *Id.*

A prisoner is not required to affirmatively plead exhaustion.  Instead, exhaustion is an affirmative defense to be raised and proven by the defense.[34]  In this case, given the time frames involved with respect to the injuries involved and the physicians' awareness of Gaines housing assignment, it is questionable whether Gaines has properly exhausted his administrative remedies with respect to the claims for which he has been granted leave to amend.[35]  Although he refers to a CDCR 602 subsequent to the second fall, Gaines does not include any allegation as to the relief requested in that CDCR 602 or the result of its internal processing.  In amending, Gaines should address this deficiency.  Gaines is cautioned that, although exhaustion is an affirmative defense that places the burden on the defense, should it be raised and established, the Complaint will be dismissed and may constitute a "strike" under the "three-strikes" rule.[36]

## IV.  ORDER

The Complaint as against Defendants RN Cornell, Correctional Officer Greenwall, and Correctional Officer Mayberry is hereby **DISMISSED** without leave to amend.

---

[34] *Id.*, 549 U.S. at 212–17 (2007); *Albino v. Baca*, 747 F3d 1162, 1166, 1168 (9th Cir. 2014) (en banc).

[35] Cal. Code Regs. tit. 15, § 3084.1(b) ("Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted.  All lower level reviews are subject to modification at the third level of review.").  Section 3084.7 provides for three levels of review, the third level conducted by the Secretary of the California Department of Corrections and Rehabilitation, or by a designated representative.  *See Brown v. Valoff*, 422 F.3d 926, 929-30 (9th Cir. 2005)

[36] 28 U.S.C. § 1983(g).

The Complaint as against Defendants California Department of Corrections and Rehabilitation, L. D. Zamora, Chief, Medical Appeals, Horowitz, MD, and Robert Rudas, MD is hereby **DISMISSED** with leave to amend.

Plaintiff has through and including **October 30, 2015**, within which to file an amended complaint consistent with this Order.  In filing his amended complaint, Gaines should:

1.     Adhere to the Federal Rules of Civil Procedure regarding pleadings, in particular, Rule 8(a), which provides—

> (a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

2.     Use and follow the instructions for completing the form provided by the Clerk of the Court.

3.     Simply plead the facts entitling him to relief with respect to each claim: (1) the identity of the person doing the act; (2) describe the act; (3) describe the harm/injury suffered as a result; and (4) the specific relief requested, e.g., amount of monetary damages, without legal argument or citation to authority.

4.     Contain sequentially numbered paragraphs, and have attached copies of all documents referred to in the body of the complaint to the extent that copies of such documents are within his possession, custody, or control.

In the event Plaintiff fails to file an amended complaint consistent with this Order within the time specified, or such later time as the Court may order, a judgment of dismissal may be entered without further notice.

**IT IS SO ORDERED** this 11th day of September, 2015.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE