# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THURMAN GAINES, | Case No. 1:15-cv-00587-LJO-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON NON-EXHAUSTION GROUNDS |
| v. | |
| CALIFORNIA DEPT. OF CORRECTIONS, et al., | (ECF Nos. 77, 81, 84) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

Thurman Gaines ("Plaintiff"), a state prisoner, is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendant's motion for summary judgment on the grounds of failure to exhaust administrative remedies.[1] For the reasons discussed below, it is recommended that Defendants' motion for summary judgment be denied without prejudice and the matter be referred for an evidentiary hearing.

## I.

## RELEVANT PROCEDURAL HISTORY

This action has a lengthy procedural history. Plaintiff filed this action on April 16, 2015. (ECF No. 1.) On August 28, 2015, the matter was reassigned to Chief Judge Ralph R. Beistline

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by Defendants in the motion for summary judgment. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1

for all proceedings.  (ECF No. 9.)  On October 10, 2015, a screening order was filed dismissing Plaintiff's complaint for failure to state a claim and granting Plaintiff an opportunity to file an amended complaint by October 30, 2015.  (ECF No. 10.)

After being granted several extensions of time, Plaintiff filed an amended complaint on February 5, 2016.  (ECF No. 15.)  On February 11, 2016, an order issued dismissing the federal claims for failure to state a claim and granting Plaintiff leave to file a second amended complaint by March 31, 2016.  (ECF No. 16.)

Plaintiff filed a second amended complaint on April 11, 2016.  (ECF No. 19.)  On April 14, 2016, a screening order was filed finding that Plaintiff's second amended complaint stated a deliberate indifference claim against Dr. E. Horowitz ("Defendant").  (ECF No. 20.)  Defendant filed a waiver of service and an answer was filed on August 18, 2016.  (ECF Nos. 25, 27.)  A discovery and scheduling order issued on this same date.  (ECF No. 28.)  The scheduling order was amended on September 9, 2016 and November 3, 2016.  (ECF Nos. 30, 34.)

On November 1, 2016, Defendant filed a motion to compel and a request for an extension of time to file a motion regarding exhaustion until after Plaintiff responded to discovery.  (ECF Nos. 32, 33.)  On November 3, 2016, Defendant's request for an extension of time was granted.  (ECF No. 34.)  On December 14, 2016, this matter was reassigned to Chief Judge Lawrence J. O'Neill and Magistrate Judge Stanley A. Boone.  (ECF No. 36.)

On December 17, 2016, Defendant filed a motion to modify the scheduling order.  (ECF No 37.)  On July 14, 2017, Defendant's motion to compel was granted in part and denied in part and the motion to amend the scheduling order was granted.  (ECF No. 38.)  A new discovery and scheduling order issued.  (ECF No. 39.)

On August 24, 2017, Defendant filed a motion for sanctions based on Plaintiff's failure to comply with the July 14, 2017 order.  (ECF No. 40.)  On September 18, 2017, Plaintiff filed a notice of voluntary dismissal.  (ECF No. 42.)  On September 21, 2017, findings and recommendations issued recommending granting Plaintiff's motion for dismissal contingent upon him producing the requested discovery.  (ECF No. 43.)  On October 17, 2017, the findings and recommendations was adopted and Plaintiff was ordered to produce the discovery and file a

notice of compliance within thirty days at which time the matter would be dismissed without prejudice and that if Plaintiff failed to comply the matter would be dismissed with prejudice. (ECF No. 44.)  On November 13, 2017, Plaintiff filed a motion for an extension of time which was granted.  (ECF Nos. 45, 46.)  On December 7, 2017, Plaintiff filed a notice of compliance and a motion for withdrawal of his voluntary dismissal of this action.  (ECF Nos. 47, 48.)

On December 18, 2017, Defendant filed a second motion for sanctions.  (ECF No. 49.)  On December 20, 2017, Defendant's August 24, 2017 motion for sanctions was denied without prejudice.  (ECF No. 50.)  On March 22, 2018, a findings and recommendations issued recommending that evidentiary sanctions be issued for Plaintiff's failure to provide discovery and to comply with the orders that he produce supplemental discovery responses.  (ECF No. 59.)  Plaintiff filed objections and on April 9, 2018, an order was filed adopting the findings and recommendations in part and finding that terminating sanctions were appropriate, the action was dismissed, and judgment was entered against Plaintiff.  (ECF Nos. 60, 61, 62.)

On April 20, 2018, Plaintiff filed a notice of appeal which was forwarded to the Ninth Circuit.  (ECF Nos. 65, 66.)  On December 3, 2018, the Ninth Circuit reversed the imposition of terminating sanctions and a mandate issued on April 2, 2019.  (ECF Nos. 71, 72.)  On April 4, 2019, an amended scheduling order issued.  (ECF No. 73.)

On May 10, 2019, Defendant filed the instant motion for summary judgment.  (ECF No. 77.)  After receiving an extension of time, Plaintiff filed an opposition on July 1, 2019.  (ECF No. 81.)  After receiving an extension of time, Defendant filed a reply on July 19, 2019.  (ECF No. 84.)

## II.

## RELEVANT COMPLAINT ALLEGATIONS

At the time of the incidents alleged in the complaint, Plaintiff was sixty-one years old and suffered from back pain in the lumbar spine; arthritis in both hips, the left foot, and knees; hypertension; hepatitis C; sleep apnea; and had a learning disability.  Plaintiff also ambulated with the use of a cane.  Defendant Horowitz was Plaintiff's primary care physician while he housed at Mule Creek State Prison ("MCSP").

Around June 30, 2014, Plaintiff fell while exiting his cell. His lower back and legs were numb and Plaintiff was unable to get up off the floor. Plaintiff was initially treated by Dr. Rudas and requested a chrono for ground floor housing and a lower bunk which was denied.

Plaintiff was seen by Defendant on July 3, 2014 for a follow-up appointment. Plaintiff asked Defendant to initiate a chrono for ground floor housing and a lower bunk. Defendant responded that she could not do anything about Plaintiff's housing because it was up to custody staff. Defendant prescribed medication and referred Plaintiff to physical therapy.

Around July 20, 2014, Plaintiff's left side went numb and he collapsed while he was going down the stairs. Plaintiff sought the assistance of another inmate to file an administrative appeal, but it disappeared and he did not see it again.

Plaintiff was transported to Sutter Amador Hospital. Plaintiff filed a separate administrative appeal grieving Defendant's interference with his prescribed medication. On July 23, 2014, Defendant saw Plaintiff for a follow-up and Plaintiff was given a chrono for ground floor housing and a lower bunk, along with a single point cane, mobility vest, and no stairs.

On August 6, 2014, Defendant interviewed Plaintiff regarding Plaintiff's appeal that Defendant had interfered with his medication. Defendant reminded Plaintiff that she had granted his request for ground floor housing and a lower bunk chrono and the appeal was granted in part. Plaintiff attempted to address the chrono issue in his appeal regarding the denial of medication but was informed that he could not add any new issues. Plaintiff sought the advice of other inmates who told him that he did not need to further appeal the chrono issue because his request had been granted.

### III.

### LEGAL STANDARD

#### A. Statutory Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross v. Blake, __ U.S. __ 136 S. Ct. 1850 (June 6, 2016) ("An inmate need exhaust only such administrative remedies that are 'available.'"). Exhaustion

1  is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long

2  as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies

3  . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422

4  F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739

5  (2001)).

6      This statutory exhaustion requirement applies to all inmate suits about prison life, Porter

7  v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by

8  the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims

9  may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at

10  524).

11      The failure to exhaust is an affirmative defense, and the defendants bear the burden of

12  raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d

13  1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear from the face of

14  the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at

15  1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they

16  are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the

17  light most favorable to the plaintiff, shows he failed to exhaust. Id.

18      **B.    Summary Judgment Standard**

19      Any party may move for summary judgment, and the Court shall grant summary

20  judgment if the movant shows that there is no genuine dispute as to any material fact and the

21  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks

22  omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir.

23  2011). Each party's position, whether it be that a fact is disputed or undisputed, must be

24  supported by (1) citing to particular parts of materials in the record, including but not limited to

25  depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not

26  establish the presence or absence of a genuine dispute or that the opposing party cannot produce

27  admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The

28  Court may consider other materials in the record not cited to by the parties, although it is not

required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, <u>Albino</u>, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," <u>id.</u> at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." <u>Id.</u> "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." <u>Id.</u> at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." <u>Id.</u>

## IV.

## DISCUSSION

Defendant moves for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies.  Defendant contends that none of the administrative grievances that Plaintiff filed addressed the failure to provide him with a lower tier, lower bunk accommodation. Defendant argues that although Plaintiff alleges that he filed an administrative grievance that was lost, he still had administrative remedies available and did not attempt to refile or find the administrative grievance.  Defendant further moves for an evidentiary hearing should the Court find that it would be required to resolve any genuine disputes of material fact as to exhaustion.

Plaintiff counters that he is a recognized disabled and mentally handicapped individual and therefore, since he is in a protected class, California Department of Corrections and Rehabilitation ("CDCR") was required to assist him in preparing and filing his administrative grievance.  Further, Plaintiff states that it is obvious that Defendant received his administrative grievance because she stated that he had already received a lower tier, lower bunk chrono in addressing his grievance that he was denied medication.  Plaintiff contends that he exhausted

those administrative remedies that were available to him and no further exhaustion was possible or required under the circumstances. Plaintiff argues that, since he is a disabled inmate, the failure to assist him in filing an appeal thwarted his ability to exhaust administrative remedies. Plaintiff contends that he has raised a genuine issue of material fact to preclude summary judgment. He contends that once his appeal was granted he had no warning of the need to appeal further.

Defendant replies that Plaintiff has presented no evidence that his "lost" grievance was ever received by prison officials. Plaintiff has not presented a copy of the grievance and there is no record of it being filed. Defendants contend that Plaintiff has not shown that administrative remedies were unavailable, and he did not make any efforts to follow up on the "lost" grievance. Defendant argues that an inmate cannot avoid exhaustion by claiming that his grievance was lost.

## A.    Defendant's Objection to Plaintiff's Evidence in Support of Opposition

In support of his opposition to Defendant's motion for summary judgment Plaintiff submits the declarations of other inmates to show that he filed an administrative grievance. Defendant objects to the declarations filed by Plaintiff in support of his opposition. Defendant states that Plaintiff's failure to comply with his discovery obligations was the reason that this action was originally dismissed. Since the Ninth Circuit reversed the dismissal of the action as a sanction, Defendant requests that the Court preclude Plaintiff from offering the declarations filed in support of his opposition as a sanction for Plaintiff's failure to comply with the discovery orders issued in this action.

Defendant propounded discovery requests on the issue of exhaustion to Plaintiff on September 8, 2016. (Decl. of Annakarina De La Torre-Fennell in Support of Defendant's Motion to Compel Discovery Responses ¶ 4 and Exhibit A, ECF No. 33-1.) Plaintiff's responses were served on October 10, 2016. (Id. at Exhibit B.) Defendant filed a motion to compel further responses on November 1, 2016. (ECF No. 33.) On July 14, 2017, this Court issued an order granting in part Defendant's motion to compel and Plaintiff was ordered to serve supplemental responses within thirty days. (ECF No. 39.)

On August 24, 2017, Defendant filed a motion for sanctions because Plaintiff had not

served supplemental responses in compliance with the July 14, 2017 order.  (ECF No. 40.)  Plaintiff did not file an opposition to the motion, but rather on September 18, 2017, filed a notice of voluntary dismissal of the action without prejudice.  (ECF No. 42.)  On September 19, 2017, Defendant filed a reply stating that no opposition to the motion had been filed and requested that the motion for sanctions be granted.  (ECF No. 41.)  On September 21, 2017, findings and recommendations were filed recommending that Plaintiff's motion to voluntarily dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) be granted, on the condition that Plaintiff produce the discovery responses as set forth in the Court's July 14, 2017 order.  (ECF No. 43.)  The findings and recommendations was adopted on October 17, 2017, and Plaintiff was ordered to serve supplemental responses and file a notice of compliance within thirty days.  (ECF No. 44.)

On November 14, 2017, Plaintiff was granted a thirty day extension of time to comply with the October 17, 2017 order.  (ECF No. 46.)  On December 7, 2017, Plaintiff filed a notice of compliance and a request to withdraw his notice of voluntary dismissal.  (ECF Nos. 47, 48.)  On December 18, 2017, Defendant filed a motion for sanctions arguing that Plaintiff's notice of compliance did not adequately respond to the discovery requests.  (ECF No. 49.)  On December 20, 2017, orders issued granting Plaintiff's request to withdraw his notice of voluntary dismissal of the action and denying without prejudice Defendant's August 24, 2017 motion for sanctions.  (ECF No. 50.)

After receiving an extension of time, Plaintiff filed an opposition to Defendant's December 18, 2017 motion for sanctions.  (ECF Nos. 53, 54.)  Defendant filed a reply on January 22, 2018.  (ECF No. 55.)  On March 22, 2018, findings and recommendations issued recommending that Defendant's request for terminating sanctions be denied and that Plaintiff be barred from supporting his case or opposing Defendant's defenses with any evidence not disclosed in response to Defendant's exhaustion interrogatories or requests for production of documents as a sanction for the discovery violations.  (ECF No. 59.)  On April 9, 2018, the findings and recommendations were adopted in part.  (ECF No. 61.)  The district judge found that the discovery that Plaintiff refused to answer was extensive and thorough and it would not

be possible at trial to exclude all the issues that Plaintiff did not respond to in discovery and still have a case to present.  (<u>Id.</u> at 2.)  The district judge granted the request for terminating sanctions.  (<u>Id.</u>)

On appeal the Ninth Circuit vacated the order and remanded the matter.  (ECF No. 69.) The Ninth Circuit found

> It is unclear from the district court's order what evidence the district court intended to exclude and how the exclusion would preclude Gaines from presenting the merits of his medical deliberate indifference claim.  Moreover, it is not clear whether an evidentiary sanction is warranted given that Gaines eventually complied with his discovery obligations to defendant's satisfaction.

(<u>Id.</u> at 2.)

Defendant has now renewed the request for an evidentiary sanction.  Plaintiff's failure to comply in this case is clearly documented in the record, and the Court is unpersuaded by Plaintiff's argument that he was a layman and did not understand what was required of him.  The orders were clear that he was to respond to specific discovery requests.  The Court finds that the failures to comply with the discovery requests were willful.

Rule 37 of the Federal Rules of Civil Procedure, "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules."  <u>Wyle v. R.J. Reynolds Indus., Inc.</u>, 709 F.2d 585, 589 (9th Cir. 1983); <u>see</u> also Local Rule 110.  "Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct."  <u>Navellier v. Sletten</u>, 262 F.3d 923, 947 (9th Cir. 2001).  Under Rule 37(b)(2), subsections (A) through (C), sanctions are "appropriate only in 'extreme circumstances' and where the violation is 'due to willfulness, bad faith, or fault of the party.' " <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 905 (9th Cir. 2002).  Rule 37(b)(2) provides available sanctions for the failure to obey a discover order which includes prohibiting the disobedient party from introducing designated matters into evidence.  Fed. R. Civ. P. 37(b)(2)(A)(ii).  Such sanctions are available where a party fails to serve answers to interrogatories. Fed. R. Civ. P. 37(d)(1), (3).

Where a party is found to have failed to obey a court's discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Monetary sanctions, such as requiring Plaintiff to pay for the legal expenses that Defendant incurred in bringing the motions to compel are not available as Plaintiff is incarcerated and is proceeding *in forma pauperis*. Plaintiff did eventually comply and the Court found that his responses were adequate, but there was significant non-compliance with Plaintiff's discovery responses and this Court's orders that should not be ignored. Failure to impose a sanction based on this conduct would encourage Plaintiff's non-compliance in this and other cases. Accordingly, the Court recommends the following sanction. Plaintiff should be precluded from using any evidence that was not disclosed by the January 22, 2018 opposition to Defendant's motion for sanctions in opposition to this motion for summary judgment. This recognizes that Plaintiff did eventually comply and will not result in his case being dismissed, but provides a sanction for Plaintiff's willful non-compliance with his discovery obligations and the Court's orders.

Defendant propounded an interrogatory no. 4 which stated that Plaintiff was to "[i]dentify each and every person by name and ADDRESS who you contend has knowledge of any fact supporting your contention that you filed an administrative appeal on July 21, 2014, relevant to the allegations in your complaint." (ECF No. 33-1 at 6.) In his supplemental response to interrogatory no. 4, Plaintiff identified the following individuals who had knowledge of the fact that he filed an appeal: Physician Assistant T. Byers; Health Care Appeal's Coordinator L.D. Zamora, Dr. Horowitz, Dr. Rudas, Registered Nurse S. Cornell, Correctional Officer Greenwall, and Correctional Officer Meyberry. (ECF No. 48 at 4-7.)

Plaintiff also disclosed that inmate Cooper had assisted him in preparing his grievance, therefore, the Court shall consider the declarations of inmate Cooper submitted in support of the opposition to the motion for summary judgment. (ECF No. 48 at 8, 9; ECF No. 54 at 6, 13, 14-15, 18-19, 22, 23-24.) Plaintiff also disclosed that inmate Daryl Harris helped him search for his

grievance and included a declaration from inmate Harris. (ECF No. 48 at 8-9; ECF No. 54 at 9, 17, 25.)

In support of his opposition to Defendant's motion for summary judgment, Plaintiff has submitted declarations from inmate Albert Sanchez and Norberto Robancho stating that they had knowledge that Plaintiff filed an inmate appeal. (ECF No.81 at 79, 81.) These witnesses were not disclosed in Plaintiff's prior discovery responses and the Court finds that excluding any evidence from Albert Sanchez and Norberto Robancho in deciding whether Plaintiff has exhausted his administrative remedies is an appropriate sanction to address Plaintiff's failure to comply with his discovery obligations. Therefore, the Court shall not consider the declarations of inmates Sanchez and Robancho in the current motion.

### B. Description of CDCR's Administrative Remedy Process

Plaintiff is a state prisoner in the custody of CDCR, and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs. tit. 15, § 3084.1.[2] Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). CDCR's administrative grievance process for appeals consists of three levels of review: (1) first level formal written appeals; (2) second level appeal to the Warden or designees; and (3) third level appeal to the Office of Appeals (OOA). Inmates are required to submit appeals on a standardized form (CDCR Form 602), attach necessary supporting documentation, and submit the appeal within thirty days of the disputed event. Cal. Code Regs. tit. 15, §§ 3084.2, 3084.3(a), 3084.8(b).

### C. Whether Plaintiff Exhausted his Administrative Remedies

Defendant contends that Plaintiff did not exhaust his administrative remedies because he did not submit an appeal that was addressed through the final level of review. An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the

---

[2] Subsequently California adopted new regulations that governed the administration of the health care grievance process. However, section 3084 et seq. governed health care appeals at the time Plaintiff's grievance was filed. See Cal. Code Regs. tit. 15, § 3087 (operative 9/1/2017). All references to Title 15 cited herein refer to the regulations in effect in 2014 when Plaintiff's appeal was submitted.

prisoner seeks redress," and "the prisoner need only provide the level of detail required by the prison's regulations." Sapp, 623 F.3d at 824. In California, the applicable regulation states:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3). In addition, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted CDCR-602 inmate appeal form. Cal. Code Regs. tit. 15, § 3084.1(b).

1.    Health Care Appeals

In support of the motion for summary judgment, Defendant submits the declaration of S. Gates who oversees the process of health care appeals and grievances regarding medical, dental, and mental health care services. (Decl. of S. Gates in Support of Def.'s Mot. for S.J. ("Gates Decl.") ¶ 2, ECF No. 77-4.) The first and second level health care appeals are processed by staff located at the prison, while the third level appeal is processed by the Heath Care Correspondence and Appeals Branch ("HCCAB") which is located at the California Correctional Health Care Services ("CCHCS") headquarters. (Id.) All levels of the appeals are tracked through the computer database known as the Health Care Appeals and Risk Tracking System ("HCARTS"). (Id. at ¶ 4.) HCARTS tracks the first and second appeals filed at the institutional level as well as the third level appeals processed by the HCCAB. (Id.) HCARTS tracks appeals that are received and rejected as well as the reason for the rejection. (Id.)

Mr. Gates conducted a review of the inmate health care appeal records which showed that Plaintiff had only filed one health care appeal between July 1, 2014 and April 16, 2015, Appeal No. MCSP HC 14045270. (Gates Decl. ¶ 8.) The appeal was denied at the third level. (Id.) If Plaintiff had filed any other health care appeal during this time period it would have been assigned a log number for tracking purposes. (Id.)

**a. Appeal No. MCSP HC 14045270**

On June 26, 2014, Plaintiff submitted Appeal No. MCSP HC 14045270 grieving that he wanted to have his pain medication reinstated for his back. (ECF No. 77-4 at 1.) The appeal was rejected on July 8, 2014, with instructions. (Id.) Plaintiff resubmitted the appeal on July 8, 2014. (Id.)

Plaintiff's request to have his pain medication reinstated was granted in part on August 19, 2014. (ECF No. 77-4 at 20-21.) Plaintiff was interviewed by Defendant on August 6, 2014 in Appeal No. MCSP HC 14045270. The first level response states,

> [Defendant] said that you were seen by her in March when you described left sided pain in your foot and your last job as a porter. [Defendant] said you were on the medications Cymbalta and Tramadol at the time and determined to be functional. [Defendant] said that your medications were adjusted; however you were continued on Cymbalta. [Defendant] said you were seen on May [sic] and you stated you felt fine. [Defendant] said in July you described doing "seven sets" of exercised [sic] daily, working up to ten from the previous two, and your attempt to again get a porter job. [Defendant] said that your medications were again adjusted but you remained on medications. [Defendant] said that you [sic] July 20, 2014, you fell and when you were seen you were continued on various medications, but a cane, mobility vest, lower and lower tier Chrono were added along with a referral to physical therapy.

> [Defendant] said you have been evaluated for your chronic pain and have been given several accommodations including a cane, lower bunk and tier, special shoes, and limited walking or standing. [Defendant] said you have complained about all medications you have previously and currently are receiving stating you only need Gabapentin.

> [Defendant] said you are currently scheduled to have another MRI with the plan being to attempt relief of significant back abnormalities with surgery. [Defendant] said you remain functional in your activities of daily living and are currently continued on pain medications including narcotics and anti-inflammatories.

(ECF No. 77-4 at 20-21.)

On August 23,2014, Plaintiff submitted the appeal to the second level stating that he disagreed with the response because he was placed on Cymbalta which was very bad for his liver due to his Hepatitis C. (Id. at 16.) He also complained that Defendant had him on the top tier when he should have been on the lower tier and that he received his accommodation only after he suffered injuries due to being on the top tier. (Id. at 16, 19.) Plaintiff stated that he still had constant pain and his finger was still disfigured from falling down the stairs due to Defendant

having him on the top tier.  (Id. at 19.)  He sought to have his appeal granted in full.  (Id.)

On October 1, 2014, Plaintiff's appeal was denied at the second level.  (Id. at 22-23.)  As relevant here, it was found that Plaintiff had added new issues to his appeal, concerns regarding the medication Cymbalta and a complaint regarding Defendant and the disfigurement of his finger as a result of the fall.  (Id. at 22.)  These issues were not addressed because Plaintiff could not expand the appeal beyond the initial request.  (Id.)  Ultimately, the appeal found that Plaintiff's medical care was appropriate and timely.  (Id. at 23.)

Plaintiff submitted the appeal to the third level on November 3, 2014.  (Id. at 16.) Plaintiff requested that he be placed back on Gabapentin and Morphine for pain relief.  (Id.)  On January 27, 2015, Appeal No. MCSP HC 14045270 was denied at the third level of review exhausting administrative remedies.  (Id. at 14-15.)  The appeal stated that Plaintiff was receiving pain medication to treat his symptoms and was seen by a neurosurgeon on October 14, 2014. (Id. at 14.)  Surgery was discussed, but Plaintiff indicated he was not interested in surgery at this time.  (Id.)  An appropriate treatment plan was discussed which included physical therapy and medical management of his low back pain.  (Id.)  Plaintiff received physical therapy from November 25, 2014 until December 9, 2014.  (Id.)  On December 18, 2014, it was noted that Plaintiff refused to continue physical therapy.  (Id.)  Plaintiff's appeal was denied as it was determined that he was receiving treatment that was deemed medically necessary.  (Id. at 15.)

Although Plaintiff tried to include the failure to provide lower tier and lower bunk accommodations at the second level, an appeal is limited to a single issue or related set of issues. Cal. Code Regs. tit. 15, § 3084.2(a).  While Plaintiff tried to add the issue at the second level it was not addressed because the second level is for review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level.  Cal. Code Regs. tit. 15, § 3084.7(b). Plaintiff's attempt to add a new issue at the second level was improper under the regulations. Cal. Code Regs. tit. 15, § 3084.1(b) ("Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602.").  Appeal No. MCSP HC 14045270 did not exhaust administrative remedies for Plaintiff's claims in this action.

2.  Non Health Care Related Appeals

Defendants submit the declarations of M. Johnston, Appeals Coordinator at MCSP; J. Rivera, Appeals Coordinator at California Correctional Institute for Men in Chino ("CCIM"); and T. Ramos, Chief of the Appeals Office for the CDCR; (Decl. of M. Johnston in Support of Mot. for S.J. ("Johnston Decl."), ECF No. 77-5; Decl. of J. Rivera in Support of Def's Mot. for S.J. ("Rivera Decl."), ECF No. 77-6; Decl of T. Ramos in Support of Def.'s Mot. for S.J. ("Ramos Decl."), ECF No. 77-7.)  All inmate appeals that are not health care related are reviewed by the Appeals Coordinator at the prison.  (Johnston Decl. ¶ 5; Rivera Decl. ¶ 5.) Similar to the health care appeals, the inmate is required to submit non health care related appeals within thirty calendar days of the event or events of which they are complaining. (Johnston Decl. ¶ 7; Rivera Decl. ¶ 7.)  If the inmate is dissatisfied with the response at the first level then he may submit the appeal for review at the second level.  (Johnston Decl. ¶ 8; Rivera Decl. ¶ 8.)  If the inmate is denied or is otherwise unhappy with the result of the appeal he must mail the appeal to the Chief of the chief of the OOA.  (Johnston Decl. ¶ 9; Rivera Decl. ¶ 9.)

When an appeal is submitted it is assigned a log number and maintained in both the inmate's central file and with the Appeals Coordinator at the institution in which it was filed. (Johnston Decl. ¶ 10; Rivera Decl. ¶ 10.)  The prisons maintain a database to track inmate's appeals.  (Johnston Decl. ¶ 12; Rivera Decl. ¶ 10.)  When an appeal is received at the first level of review it is assigned a log number and entered into the database.  (Johnston Decl. ¶ 12; Rivera Decl. ¶ 12.)

Mr. Johnston conducted a search of the non health care appeals submitted by Plaintiff at MCSP and found that there were none.  (Johnston Decl. ¶ 13, Inmate/Parolee Appeals Tracking System - I & II attached as exhibit C.)  Mr. Rivera conducted a search of the non health care appeals filed by Plaintiff at the CCIM.  (Rivera Decl. ¶ 13.)  Plaintiff submitted no non health care related appeals from the time that he arrived at CCIM until April 16, 2015.  (Id. ¶ 13, Inmate/Parolee Appeals Tracking System - I & II attached as exhibit D.)  Mr. Ramos conducted a search of the third level appeals for Plaintiff.  (Ramos Decl. ¶ 9.)  There were no appeals for Plaintiff that were accepted at the third level of review from July 1, 2014 through April 16, 2015.

(Id. at ¶ 10, Inmate/Parolee Appeals Tracking System - III attached as exhibit E.)

Defendant has submitted evidence that administrative remedies were available and that Plaintiff did not exhaust his administrative remedies for the failure to provide him with a lower tier and lower bunk chrono. The burden shifts to Plaintiff to show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1166.

### 3. Plaintiff's Argument and Evidence

Plaintiff contends that there are disputed facts to preclude summary judgment and that there are no facts that would require an evidentiary hearing and objects to any such hearing.[3]

### a. Whether Prison Officials Were Required to Provide Assistance

First, Plaintiff objects to factual errors and misrepresentation of events included in Defendant's motion. Plaintiff asserts that he is mentally handicapped inmate with a TABE score lower than 2.0 and therefore is in a protected class. Defendant responds that the prison is not required to provide assistance to inmates in drafting administrative grievances nor is it required to ensure that the grievance process is successful. The regulations require that inmates be provided with equal access and the assistance necessary to participate in the process. Defendant contends that the record demonstrates that Plaintiff was able to participate in the grievance process.

The evidence produced shows that on June 16, 2015, Plaintiff was found to have a Tests of Adult Basic Education ("TABE") score of 3.2. (ECF No. 81 at 38.) "The TABE . . . scores reflect an inmate's educational achievement level and are expressed in numbers reflecting grade level." Adams v. Paramo, No. CV 15-5417-FMO (KES), 2016 WL 11518348, at *8 (C.D. Cal. Jan. 20, 2016) (citing Jimenez v. Martel, 2013 WL 8173899, at *10 n.17 (C.D. Cal. Aug. 2, 2013)). "TABE scores below 4.0 demonstrate functional illiteracy." Adams, 2016 WL 11518348, at *8 (citing Johnson v. Walker, 2011 WL 1668970, at *3 (E.D. Cal. Apr. 29, 2011)).

The record reflects that Plaintiff did not appear to have any cognitive or adaptive

---

[3] Much of Plaintiff's opposition argues the merits of his case, however the only issue currently before the Court is whether Plaintiff exhausted his administrative remedies. Plaintiff's argument regarding the merits of the action shall not be addressed herein.

impairment that would qualify him for inclusion in the DD program. (Id. at 39-40.) Plaintiff cannot read or write well but is working toward improving this. (Id. at 40.) He is an adaptive person who has been incarcerated more than not throughout his life. (Id.) He understands the correctional system and can ask for help when he needs it. (Id.)

Plaintiff argues that pursuant to prison regulations and the American's with Disabilities Act, the prison was required to assist him in preparing and filing his grievance and such assistance was not provided. Plaintiff cites to the regulations which provides that "[d]epartment staff shall ensure that inmates and parolees, including those who have difficulties communicating, are provided equal access to the appeals process and the timely assistance necessary to participate throughout the appeal process." Cal. Code Regs. tit. 15, § 3084.1(c). Although Plaintiff presents evidence that he has in the past requested assistance in filing habeas petitions and has been recognized as an educationally handicapped individual, Plaintiff has presented no evidence that he made any request for assistance from prison officials in this instance. Rather, Plaintiff's evidence shows that he requested the assistance of inmate Cooper who assisted him in preparing the appeal and helped Plaintiff to mail it. (Decl. by Victor W. Cooper in Support of Pl.'s Opp. to Def.'s Mot. for S.J. for Failure to Exhaust Admin. Remedies ("Cooper Decl.") ¶¶ 5, 6, 8, ECF No. 81 at 72-72; Decl. of Thurman Gaines in Support of Pl.'s Opp. to Def.'s Mot. for S.J. for Failure to Exhaust Admin. Remedies ("Gaines Decl.") ¶ 5, ECF No. 82 at 74-75.) Plaintiff signed and dated the appeal and inmate Cooper deposited in the prison's internal mail system. (Cooper Decl. ¶ 9.)

Plaintiff has not submitted any evidence that he was denied assistance by prison officials in submitting an appeal of the denial of a lower tier and lower bunk chrono. The Court finds that he was not excused on this ground from exhausting his administrative remedies.

### b. Whether Granting of Appeal No. MCSP HC 14045270 Demonstrates that an Appeal was Filed

Plaintiff contends that it is obvious that his grievance regarding the denial of a lower tier and lower bunk chrono was received because Appeal No. MCSP HC 14045270 was partially granted and he received the relief requested. However, as discussed above this appeal did not

grieve the issues raised here and does not exhaust Plaintiff's administrative remedies. Plaintiff presents no evidence that Defendant was responding to an appeal of the denial of the requested chrono and the fact that he received the requested relief cannot be found to obviously demonstrate that the appeal was received. Rather, the issuance of the chrono would appear to be have been in response to his falling down a second time on July 20, 2014. (EF No. 77-4 at 20.)

### c. Whether Plaintiff Filed Other Grievances that Would Exhaust Claims in this Action

Plaintiff argues that Defendant is incorrect in stating that his claims are limited to events after July 3, 2014 because prison officials were on notice of his request for a medical chrono in early June before his first fall on June 30, 2014. However, the issue here is whether Plaintiff filed a grievance regarding denial of the lower tier and lower bunk chrono.

A grievance that alerts prison officials to the nature of the wrong can be sufficient to exhaust administrative remedies even if it does not name the particular official that is sued. Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016); Smith v. Allison, No. 1:10-CV-01814-LJO, 2014 WL 6608753, at *8 (E.D. Cal. Nov. 19, 2014), report and recommendation adopted, No. 1:10-CV-01814-LJO-JL, 2015 WL 65552 (E.D. Cal. Jan. 5, 2015). However, Plaintiff has not submitted evidence of any administrative appeal prior to July 3, 2014 that grieved the failure to provide a lower tier and lower bunk chrono. Having reviewed the records of appeals submitted by Defendant, the Court finds no such appeal was filed. (See ECF No. 77-4 at 6-8.) The only appeal addressing a chrono was filed May 14, 2009 while Plaintiff was housed at the Substance Abuse Treatment Facility. (Id. at 11.) This appealed filed five years prior to the incidents alleged in the complaint and at another facility would not exhaust Plaintiff's claims in this action. Further, Plaintiff filed no non health care appeals while he was housed at MCSP. (See ECF No. 77-5 at 6.)

Plaintiff has presented no evidence that he filed any prior appeal that would have exhausted his administrative remedies regarding the denial of a lower tier and lower bunk chrono.

///

### d. Whether Plaintiff was Required to Exhaust Administrative Remedies After Receiving Chrono

Plaintiff argues that since he was granted his requested relief, as recognized in Appeal No. MCSP HC 14045270, he was not required to further exhaust administrative remedies. Defendant contends that the exhaustion requirement was not erased when Plaintiff received the requested chrono. Defendant contends that an administrative remedy was available and Plaintiff made a decision not to pursue administrative remedies in this action and therefore he did not exhaust.

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see Ross, 136 S. Ct. 1850 ("An inmate need exhaust only such administrative remedies that are 'available.' "). Exhaustion is mandatory unless unavailable. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown, 422 F.3d at 935 (citing Booth, 532 U.S. at 739). This statutory exhaustion requirement applies to all inmate suits about prison life, Porter, 534 U.S. at 532, regardless of the relief sought by the prisoner or the relief offered by the process, Booth, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones, 549 U.S. at 211 (citing Porter, 534 U.S. at 524).

In Booth, the Supreme Court specifically decided what was meant by the phrase available administrative remedies. Booth, 532 U.S. at 736. The court found that " 'such administrative remedies as are available' naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." Id. at 738. By changing the language of the statute from the requirement to exhaust effective administrative remedies, Congress manifested an intent that a prisoner is required to exhaust administrative remedies regardless of the relief offered through administrative procedures. Id. at 741.

In Porter, the plaintiff contended that prisoners were not required to exhaust excessive

force claims. The Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

The Ninth Circuit addressed these two decisions in Brown, an interlocutory appeal of two actions in which the district court had found that inmates had not exhausted administrative remedies prior to filing suit. The Brown court found that Booth was dispositive as to the basic legal question: "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown, 422 F.3d at 935. Therefore, "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." Id.

The court went on to explain that none of the purposes of the exhaustion requirement are served by requiring an inmate to continue to pursue administrative review after all "available" relief has been accorded. Brown, 422 F.3d at 936. However, the purposes can be served by relief accorded outside the usual grievance process so that waiting for results from an investigation that is triggered by the grievance process but is outside of it can serve the purposes of the exhaustion requirement. Id. Further, it is unlikely that a further administrative record will be developed once the system has provided whatever relief it can, but as long as there is an ongoing investigation into the underlying grievance prison officials may develop information that may be useful should litigation ensue. Id. Finally, requiring pointless exhaustion when no relief is available is more likely to inflame than to mollify passions and is thus unlikely to filter out frivolous claims. Id.

The Brown court then went on to decide whether the requirement had been met in the cases before it considering that it is of central importance that failure to exhaust is an affirmative defense. Brown, 422 F.3d at 936. "[T]here can be no " 'absence of exhaustion' unless some relief remains 'available,' a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the

relief already granted as a result of that process." Id. at 936–37. "Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case, such as in the response memoranda in these cases. With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, 'available'." Id. at 937.

As to Brown, the appeals court found that the Department of Corrections had not established that once it had ordered an investigation into the officer's alleged misconduct through the staff complaint process that it had any remaining authority to act on behalf of the subject complaint through the grievance process. Brown, 422 F.3d at 938. The second level appeal decision had informed the inmate that a thorough investigation would be conducted through the Office of Internal Affairs and Administration would decide on any appropriate action to be taken if necessary. Id. at 938. The memorandum did not counsel that any further review was available and the reasonable interpretation of the memorandum was that there was no further relief available through the appeals process, but the confidential staff complaint investigation would go forward and could result in an investigation of Brown's complaint. Id. at 937-38. Further, the court considered the department's directives regarding the handling of staff complaints and found that no further relief was "available" through the appeals process even though the staff complaint process was not completed. Id. at 938-39.

The defendant argued that the court could "easily imagine actions that the Department could have taken to provide relief to Brown." Brown, 722 F.3d at 939. But, "[e]stablishing, as an affirmative defense, the existence of further 'available' administrative remedies requires evidence, not imagination." Id. at 940. The Court found that Brown had exhausted such administrative remedies as were available. Id.

In Ngo, the Supreme Court considered what is meant by the term "exhausted." Ngo, 548 U.S. at 89. First, the Court considered that the purpose of exhaustion was to give the agency an

opportunity to correct its mistakes before it is haled into federal court and it discourages disregard of the agency's procedures.  Id.  Second, exhaustion promotes efficiency by allowing claims to be resolved more quickly and economically in agency proceedings than in litigation. Id.  The Court found that the text of section 1997e(a) strongly suggests that the term "exhausted" means the same as it would in administrative law, which requires proper exhaustion.  Id. at 93. This serves that purpose of the PLRA to provide the prison a fair opportunity to consider the grievance by requiring the prisoner to comply with the system's critical procedural rules.  Id. at 95.

The Ninth Circuit has recognized other situations in which an inmate was excused from exhausting administrative remedies.  See Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) (inmate's failure to exhaust was excused where he "took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting, not through his own fault but by the Warden's mistake"); Sapp, 623 F.3d at 823 (improperly screening out inmate grievance renders administrative remedies effectively unavailable).

Most recently in Ross, the Supreme Court held that an inmate need not exhaust remedies if they are not "available."  Ross, 136 S. Ct. 1850.  "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  Id. at 1858.  "[T]hat limitation on an inmate's duty to exhaust. . . has real content.  As we explained in Booth, the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' "  Id. (citations omitted).  "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' "  Id. (quoting Booth, 532 U.S. at 738.)

Here, it is clear that Plaintiff did not receive any indication through the administrative grievance process that he was no longer required to pursue administrative remedies.  Plaintiff never received any response to the alleged grievance.  Plaintiff contends that once the chrono issued he did not need to pursue the administrative grievance process, but accepting such as true is contrary to the purpose of the PLRA which is to provide prison officials an opportunity to correct its mistakes before it is haled into federal court and finding such exhaustion here would

disregard the use of the agency's procedures. Ngo, 548 U.S. at 89. Plaintiff contends that he filed an appeal of the denial of a chrono and there is no evidence that any such appeal was received, therefore the prison did not have the opportunity to investigate his claims or address any corrective action should it be found that Defendant was improperly denying medical chronos. The Court finds that Plaintiff was not excused from exhausting his administrative remedies once he received the lower tier and lower bunk chrono.

### e. Administrative Appeal of Denial of Medical Chrono

Here, Plaintiff presents evidence that that he completed an administrative grievance of the denial of a medical chrono and placed it in the mail. After being contacted by Plaintiff, on July 21, 2014, inmate Cooper composed an inmate appeal regarding the failure to provide ground floor housing, had Plaintiff sign it, and placed it in the prison mail. (Cooper Decl. ¶¶ 5, 6, 8, 9; Gaines Decl. ¶ 5.) Inmate Darrell Harris searched the property of both Plaintiff and inmate Cooper and could not find a copy of the administrative grievance. (Decl. of Darrell Harris, ECF No. 82 at 82.)

Ross recognized three circumstances in which administrative remedies that are on the books may not be capable of use to obtain relief. 136 S. Ct. at 1859. First, where it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Id. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." Id. Second, an administrative remedy might be so opaque that it is incapable of use. Id. This occurs where there is a system in place, but no ordinary prisoner can discern or navigate it. Id. Finally, the administrative process is unavailable when prison administrators thwart inmates from taking advantage of the process through machination, misrepresentation, or intimidation. Id. at 1860.

Plaintiff has met his burden of presenting evidence that a dispute of material fact exists. If Plaintiff did submit an administrative grievance that was not processed through the prison's administrative grievance process then administrative remedies were not available to him.

Defendant argues that an inmate is not excused from exhausting his administrative remedies simply because he asserts that his grievance was lost. Defendant relies on cases where

the court found that the inmate's assertion that he never heard any further response on a filed appeal were too vague and inconclusive to create a genuine issue as to whether there was exhaustion of available administrative remedies.  See Jackson v. Baca, No. CV12-10393-JLS JEM, 2018 WL 1916307, at *6 (C.D. Cal. Feb. 13, 2018), report and recommendation adopted, No. CV12-10393 JLS JEM, 2018 WL 1918497 (C.D. Cal. Apr. 18, 2018) ("Plaintiff's assertions that he gave a deputy an inmate complaint form and then never heard anything again are simply too vague and inconclusive to create a genuine issue regarding exhaustion or the availability of administrative remedies."); Rodgers v. Reynaga, No. CV 1-06-1083-JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009), aff'd, 393 F. App'x 447 (9th Cir. 2010) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule."); Hendon v. Baroya, No. 1:05-CV-00838-OWW-SMS-PC, 2007 WL 3034263, at *3 (E.D. Cal. Oct. 16, 2007), report and recommendation adopted, No. 1:05-CV-00838-OWW-SMS-PC, 2008 WL 482868 (E.D. Cal. Feb. 20, 2008), aff'd, 320 F. App'x 717 (9th Cir. 2009) ("The vague assertion that grievances were filed is insufficient to make the requisite showing that exhaustion either occurred or was excused due to some form conduct on the part of prison officials which prevented plaintiff from properly utilizing the appeals process.").

Here, Plaintiff has submitted more than vague conclusory allegations that he filed an appeal that was not processed.  Plaintiff has presented declarations from himself and the inmate that prepared the grievance setting forth the substance of the grievance, when it was completed and when it was placed in the institution's mail.  This is sufficient to create a genuine dispute of material fact as to whether a grievance was filed.

Defendant also argues that the declarations filed are self-serving and the court should fail to find a genuine dispute of fact on that ground.  However, all evidence that supports an inmates claims can be said to be self-serving and the court does not find this to be a valid reason to find failure to exhaust in this case.

Finally, Defendant cites to Title 15 which provides that "[a]ny inmate . . . may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or

parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(b). Defendant argues that Plaintiff did not follow-up on the lost grievance and administrative remedies remained available because he could have filed a new grievance seeking reinstatement of the lost grievance. However, Defendant points to no regulation, and the Court finds none, that require an inmate to further appeal the loss of a grievance in order to exhaust administrative remedies. While an inmate could file a request for the status of his grievance, see Cal. Code Regs. tit. 15, § 3086(a), and did not do so here, the Court finds this to be a relevant consideration that goes to credibility rather than to the exhaustion requirement.

The Court finds that a genuine dispute of material facts exists as to whether Plaintiff filed an administrative appeal of Defendant's denial of his request for a lower tier and lower bunk chrono. Accordingly, since material facts are disputed, "the district judge rather than a jury should determine the facts." Albino, 747 F.3d at 1166. Defendant has requested an Albino hearing should the court find that facts are in dispute and the Court recommends that this matter be referred back for an evidentiary hearing on the issue of whether Plaintiff filed an administrative appeal grieving the denial of a lower tier and lower bunk chrono.

## V.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.    Defendant's motion for summary judgment on the issue of exhaustion be DENIED WITHOUT PREJUDICE; and

2.    This matter be set for an Albino hearing on the issue of whether Plaintiff filed an administrative appeal grieving Defendant's denial of a lower tier and lower bunk chrono.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within thirty (30) days of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**September 5, 2019**__

UNITED STATES MAGISTRATE JUDGE